IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANCISCO FRANCO,

     Plaintiff,

  vs.                      No. 13-CV-714 LH-GBW

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF ROOSEVELT,
in its official capacity;
CHARLENE WEBB, in her individual and
official capacities; DAVID CASINOVA,
in his individual and official capacities; and
TAMARA PEEL, in her individual and official capacities,

     Defendants.

## MOTION FOR SUMMARY JUDGMENT
## BASED ON
## ABSOLUTE IMMUNITY AND QUALIFIED IMMUNITY

COME NOW the Defendants Board of County Commissioners of the County of Roosevelt, Charlene Webb, David Casanova,[1] and Tamara Peel, by undersigned counsel, pursuant to Fed.R.Civ.P. 56, and respectfully move the Court to enter summary judgment in their favor as to the Civil Complaint for Civil Rights Violations ("Complaint") (Doc. 1). The Complaint raises claims of alleged violation of substantive and procedural due process rights, pursuant to 42 U.S.C. § 1983; false arrest under the Fourth and Fourteenth Amendments to the United States Constitution, and Section 1983; and tort claims under the New Mexico Tort Claims Act.

THE GROUNDS for this motion are that as demonstrated herein, there is no genuine issue as to any material fact and the undisputed evidence shows that all Defendants are entitled to absolute and qualified immunity, and judgment as a matter of law.

---

[1] Plaintiff has misspelled Defendant Casanova's surname in the Complaint, as "Casinova" instead of the correct Casanova. Defendants will use the correct spelling in the instant motion.

## STANDARD OF REVIEW
### Summary Judgment in General

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues to justify a trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

The nonmoving party cannot rest on mere denials, or simply show that one or more facts are disputed; the dispute must be "genuine" and must involve "material" facts.  Material facts are "facts that might affect the outcome of the suit under the governing law" and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Moreover, disputes about material facts must be "genuine" to prevent entry of summary judgment; that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party."  Id.  And it is clear that summary judgment is not a "disfavored procedural shortcut," but rather is "an integral part of the Federal Rules as a whole," Celotex Corp., supra, 477 U.S. at 327.

In addition, mere conclusions, speculation, conjecture or surmise cannot prevent summary judgment.  See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991); Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1170 (10th Cir.), cert. denied 525 U.S. 1054 (1998).

-2-

## Qualified Immunity

Once an individual defendant asserts qualified immunity (as is the situation here), the burden shifts and the plaintiff must come forward with sufficient evidence to establish two prongs: that the defendant's alleged conduct violated the law, and that the law violated was clearly established when the violation occurred. Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645-646 (10th Cir. 1988). The Court may determine the two issues in any order. See, e.g. Christensen v. Park City Municipal Corp., 554 F.3d 1271, 1277 (10th Cir. 2009).

## PLAINTIFF'S ALLEGATIONS

As the Court will see below, Plaintiff's Complaint rests upon false and misleading statements of material fact; specifically, that Plaintiff was placed on probation for "a misdemeanor" (rather than two misdemeanors) and all probation ended on March 7, 2013. See Compl. (Doc. 1), ¶¶ 9-13. In fact, as Plaintiff himself knows from his own certain knowledge, the undisputed evidence demonstrates that pursuant to his plea agreement, the Court sentenced Plaintiff to two separate terms of probation corresponding to the two different crimes to which he pled guilty, and expressly ordered that the two terms of probation were to be served consecutively. Thus, only one of his two terms of consecutive probation had expired at the time Plaintiff violated his conditions of probation in June of 2013; the second term of probation was still in force when the Court issued a Bench Warrant commanding Plaintiff's arrest for probation violation.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The attached affidavits and exhibits demonstrate that the following material facts are undisputed.

1. The legislature of the State of New Mexico has authorized New Mexico counties to create Misdemeanor Compliance Programs, in order to assist the State of New Mexico Magistrate Courts and District Courts monitor compliance by convicted misdemeanants with court-imposed conditions of probation, and to report compliance, and/or non-compliance by probationers, to the sentencing court. See Ex. A, ¶ 4; see § 31-20-5.1(A), NMSA 1978.

2. The Misdemeanor Compliance Programs must follow guidelines issued by the Administrative Office of the Courts, which is an agency of the New Mexico Supreme Court and has statutory duty to "supervise all matters related to administration of the courts." See NMSA 1978, §§ 34-9-1, 39-9-3(A). The guidelines authorize Court Compliance Officers to determine the extent of a probationer's compliance with his or her sentence, to interact with the Magistrate Courts and District Courts regarding such sentences, and to report probation compliance and non-compliance to the court. See Ex. A, ¶ 4; §§ 34-9-1, 39-9-3(A) NMSA 1978; Ex. P.

3. Since 2011 and at all times material to this case, Defendant Tamara Peel has served as the Court Compliance Officer for Roosevelt County, State of New Mexico, also called the Misdemeanor Probation Officer. Ms. Peel administers the county's

-4-

Misdemeanor Compliance Program.  See Ex. A, ¶ 1.[2]

4.    On December 27, 2010, the State of New Mexico, through the Ninth Judicial District Attorney of Roosevelt County, filed a Criminal Information charging Plaintiff Francisco Franco ("Plaintiff") with breaking and entering, a fourth-degree felony, and criminal damage to property under $1,000, a petty misdemeanor, in State v. Franco, Cause No. D-911-CR-2010-206.  See Ex. A, ¶ 5; see Ex. B.

5.    On March 7, 2012, the State of New Mexico and Plaintiff filed a Plea and Disposition Agreement, by which Plaintiff agreed to plead guilty to breaking and entering (attempt), a misdemeanor, and criminal damage to property, a petty misdemeanor.  As to Count I, Plaintiff agreed to 364 days of incarceration in the Roosevelt County Detention Center, to be suspended in favor of supervised probation with the Misdemeanor Probation Officer, and additional conditions of probation including drug screening and participation into and successful completion of the ASPEN program. As to Count II, Plaintiff agreed to 182 days incarceration in the Roosevelt County Detention Center, to be suspended in favor of supervised probation by the Misdemeanor Probation Officer, who was Ms. Peel.  See Ex. A, ¶¶ 1, 6; see Ex. C.

6.    The Plea and Disposition Agreement (Exhibit C) provided that the two terms of supervised probation on Count I and Count II

_____

[2] Although the "Court Compliance Officer" is also referred to in Roosevelt County as "Misdemeanor Probation Officer" (see Ex. A, ¶ 1), the Administrative Office of the Courts Program Guidelines use only the official term, "Court Compliance Officer".  See Ex. P.

(364 days and 182 days) were to run consecutively. Exhibit C was signed by Plaintiff, Plaintiff's attorney and the prosecutor; and on March 7, 2012, it was approved, signed and filed by the Court. See Ex. A, ¶ 7; see Ex. C.

7.   The Court entered a Judgment and Sentence imposing the sentence summarized in Paragraphs 5-6 above; specifically, the Court ordered that the two terms of supervised probation with the Misdemeanor Probation Officer on Count I and Count II (364 days and 182 days) were to run consecutively, with credit for 5 days of presentence confinement, for a total term of supervised probation of one year, five months, and 29 days. See Ex. A, ¶ 8; Ex. D.

8.   The Court also signed and entered a Disposition Sheet, in which the Court reiterated its sentence that Plaintiff's two terms of supervised probation (364 days and 182 days) were consecutive. See Ex. A, ¶ 9; see Ex. E.

9.   Plaintiff's probation commenced on March 8, 2012, with the first term of probation on Count I set to end on March 7, 2013 and the second, consecutive term of probation (182 days) set to commence on March 8, 2013 and to terminate on September 6, 2013. See Ex. A, ¶ 10; see Exs. C, D, E.

10.  During the first term of supervised probation (364 days), Plaintiff dutifully reported to Court Compliance Officer Teel on a monthly basis, as required by the Court's orders. See Ex. A, ¶ 11.

11.  During the first term of supervised probation (364 days), the Court issued a Bench Warrant on or about January 8, 2013, for Plaintiff's alleged violation of a condition of probation;

-6-

specifically, that Plaintiff failed to complete the court-ordered ASPEN program within the time specified by the Court. Plaintiff was arrested on the Bench Warrant and incarcerated. Thereafter, however, the Court decided not to revoke probation, but instead allowed Plaintiff to be released from custody upon the posting of a secured bond of $1,000, and to continue on supervised probation. See Ex. A, ¶ 12; see Ex. F.

12. On March 19, 2013, the State by its District Attorney filed a Notice of Dismissal of the Report of Probation Violation, noting that Plaintiff's probation as to Count I had expired on March 7, 2013. The Notice of Dismissal did not address in any way the District Court's Judgment and Sentence imposing a second, consecutive term of probation of 182 days, which second term began on March 8, 2013 and was set to terminate on September 6, 2013. See Ex. A, ¶ 13; see also Exs. C, D, E, G.

13. On March 7, 2012, Court Compliance Officer Peel submitted to the Court a Motion for Discharge and proposed Order (contained in a single document), stating that since Plaintiff had completed his 364 days of supervised probation without revocation, the Court should discharge Plaintiff from probation. The Court signed the Order on March 7, 2013 and filed the document on April 1, 2013. See Ex. A, ¶ 14; see Ex. H.

14. The purpose and intent of Exhibit H was to discharge Plaintiff only from the first of two consecutive terms of probation imposed by the Court (364 days), not to discharge him from the remaining consecutive term of supervised probation of 182 days

-7-

imposed by the Court, which was to run through September 6, 2013. See Ex. A, ¶ 15.

15. After the first term of supervised probation had ended on March 7, 2013 and Plaintiff had been discharged from that sentence, Plaintiff continued to report to Court Compliance Officer Teel monthly during his second, consecutive term of supervised probation that commenced on March 8, 2013. See Ex. A, ¶ 16; Exs. C, D, E.

16. On June 12, 2013, during Plaintiff's second term of court-ordered probation, Court Compliance Officer Teel submitted to the Court a Report of Violation. The report alleged that Plaintiff had violated the conditions of his probation by having tested positive for cocaine in a random drug screening on June 5, 2013, and having been observed by an identified Portales police officer to be "highly intoxicated" during a domestic disturbance call, and the report included supporting documentation to substantiate the alleged violations (including copies of the drug test results and the police incident report). See Ex. A, ¶ 17; Ex. H.

17. The Court signed and filed the Report of Violation, and the Court issued a Bench Warrant commanding Plaintiff's arrest for failure to comply with his court-ordered conditions of probation. See Ex. A, ¶ 18; see Exs. H, I.

18. On June 27, 2013, the State of New Mexico by its District Attorney filed a Motion to Revoke Plaintiff's Probation based on the violations. See Ex. A, ¶ 19; see Ex. J.

19. On July 1, 2013, Plaintiff was arrested on the warrant by a City of Portales police officer and taken into custody, and

-8-

booked into the Roosevelt County Detention Center, where he was incarcerated.  At booking, the arresting officer presented a copy of the signed warrant to the Roosevelt County Detention Center. See Ex. A, ¶ 20; Ex. K; Ex. M, ¶ 4; Ex. N.

20.  All of the paperwork (Exhibits C to K) had been signed by Judge Tatum.  On July 22, 2013, a different District Court Judge, Judge Mowrer, arraigned Plaintiff on the charges and ordered him released from custody.  On the same day it received the Court's release order (July 22, 2013, the day it was signed and filed), the Roosevelt County Detention Center released Plaintiff from custody. See Ex. A, ¶ 22; Ex. L; Ex. M, ¶ 5; Ex. O.

21.  On August 2, 2013, eleven days after his release from custody, Plaintiff Franco filed the instant civil action against the defendants Board of County Commissioners of Roosevelt County, County Manager Webb, Detention Center Administrator Casanova, and Court Compliance Officer Peel.  See Ex. A, ¶ 22; Compl. (Doc. 1).

**ARGUMENT AND AUTHORITY**

## I.   Absolute Immunity

Since medieval times, absolute judicial immunity has existed at common law.  See Forrester v. White, 484 U.S. 219, 225 (1988) ("comparatively sweeping form of immunity"); see, i.e. Bradley v. Fisher, 13 Wall. 335, 347 (1872)(judicial immunity from suit was "settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country"); Mireles v. Waco, 502 U.S. 9, 9-10 (1991)("generally, a judge is immune from a suit for money damages").  State judges, no

less than federal judges, are absolutely immune from liability for their judicial acts. See Briscoe v. LaHue, 460 U.S. 325, 334 (1983), citing Pierson v. Ray, 386 U.S. 547 (1967) and Stump v. Sparkman, 435 U.S. 349 (1978). Judicial immunity bars lawsuits seeking damages where the judicial acts in question are erroneous, done maliciously, and/or in excess of the court's authority. See Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); Christensen v. Ward, 916 F.2d 1462, 1473 (10th Cir.), cert. denied, 489 U.S. 999 (1990).

As pertinent to the case at bar, the law also is well-settled that in addition to judges, absolute judicial immunity applies to court employees or agents who assist with a court's orders or whose duties have an integral relation to the judicial process; such persons cannot be sued for damages. That is because the immunity "is justified and defined by the functions it protects and serves, not by the person to whom it attaches," Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000). See, for example, Wiggins v. New Mexico State Supreme Court Clerk, 664 F.2d 812, 815 (10th Cir. 1981) (New Mexico Supreme Court clerk and district court clerks have absolute immunity)("no court can discharge its judicial duties without the aid of clerks, servants and agents"); Sindram v. Suda, 986 F.2d 1459 (D.C. Cir. 1993)(clerks of D.C. Superior Court have absolute immunity; holding of "numerous other circuits")("clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process"); Oliva v. Heller, 839 F.2d 37, 39-40 (2d Cir. 1988)(judge's law clerks have

-10-

absolute immunity); <u>Pomerantz v. Los Angeles County</u>, 674 F.2d 1288 (9th Cir. 1982)(jury commissioner and employees whose duties involve the jury selection process have absolute immunity); <u>Burkes v. Callion</u>, 433 F.2d 318 (9th Cir. 1970), <u>cert. denied</u>, 403 U.S. 908 (1971)(psychiatrist who prepared and delivered a report to the court has absolute immunity); <u>Tripati v. U.S.I.N.S.</u>, 784 F.2d 345, 347-48 (10th Cir. 1986) (probation officers who made allegedly false statements in pretrial bond report and presentence report have absolute immunity); <u>Whitesel v. Sengenberger</u>, 222 F.3d 861 (10th Cir. 2000) (pretrial services officers have absolute immunity even where they exceeded their statutory authority, committed "grave procedural errors" and issued invalid discretionary orders); <u>Valdez v. City and County of Denver</u>, 878 F.2d 1285 (10th Cir. 1989) (officials acting pursuant to "facially-valid" court's order, whether verbal or written, have absolute immunity irrespective of the constitutionality or legality of the order); <u>Boyer v. County of Washington</u>, 971 F.2d 100, 101-02 (8th Cir. 1992), <u>cert. denied</u>, 508 U.S. 974 (1993) (court clerk entitled to absolute immunity for signing and issuing arrest warrant even though she exceeded her statutory authority); <u>and see also</u> the recent opinion in <u>Martinez v. Lucero</u>, Memo.Op. and Order, No. CV-11-1003-JB/LFG (Doc. 41), 2012 U.S.Dist. LEXIS 82363 (D.N.M. 2012)(court clerk entitled to absolute immunity and qualified immunity for her role in preparing a Bench Warrant, where she used erroneous information that resulted in the arrest and incarceration of an innocent person (plaintiff), who happened to share the same name as the offender).

-11-

Here, Defendant Tamara Peel was the Court Compliance Officer, administering a Misdemeanor Compliance Program authorized by the legislature of the State of New Mexico, under guidelines issued by a New Mexico Supreme Court agency. The program's purpose was to assist the state Magistrate Courts and District Courts by monitoring the compliance by convicted misdemeanants with their court-imposed conditions of probation, and to report non-compliance to the sentencing court. See Undisputed Material Facts Nos. 1-3; see § 31-20-5.1(A), NMSA 1978; Ex. P. That is precisely what Ms. Teel did here: she supervised Plaintiff's probation, as ordered by the District Court in its Judgment and Sentence (Exhibit D); she monitored Plaintiff's compliance with the court-imposed conditions of probation; she reported in writing to the Court when the first of his two terms of consecutive, supervised probation had ended; and she reported to the Court Plaintiff's violations of probation, backed up by supporting documents.

Arguably perhaps, Ms. Teel's Motion for Discharge and proposed Order (Exhibit H, subsequently signed and entered by the Court) could have been more clear in specifying what she, the prosecutor, Plaintiff and the Court already knew, to wit: that the Order discharged Plaintiff only from the first of two consecutive terms of probation imposed by the Court (364 days), not from the remaining term of supervised probation of 182 days which remained in full force and effect. Unquestionably, however, Ms. Teel's acts "had an integral relationship with the judicial process" and she therefore is clothed with absolute judicial immunity. See Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002), quoting Whitesel v.

Sengenberger, supra, 222 F.3d at 867; see also, Tripati v. U.S.I.N.S., supra, 784 F.2d at 347-48 (probation officers have absolute immunity for accusations that they made false statements in pretrial bond report and presentence report because the acts were ones "intimately associated with the judicial phase of the criminal process").

Defendant David Casanova, head of the County Detention Center, did nothing more (albeit not personally) than incarcerate Plaintiff based on the express, facially-valid terms of the Bench Warrant. He, too, is absolutely immune from suit for damages. Valdez v. City and County of Denver, supra. As for Defendant Charlene Webb, the County Manager, it is anybody's guess what she is alleged to have done in alleged violation of the United States Constitution. See Compl. at ¶ 3.

## II.  Qualified Immunity

If the Court finds that Ms. Peel is not absolutely immune from liability, then she clearly is, instead, qualifiedly immune.

When an individual defendant such as Ms. Peel asserts qualified immunity, the burden shifts and the plaintiff must come forward with sufficient evidence to establish two prongs: that the defendant's alleged conduct violated the law, and that the law violated was clearly established when the violation occurred. Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645-646 (10th Cir. 1988) ("plaintiff carries the burden of convincing the court"); Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993)("the plaintiff bears a heavy burden"); see also,

-13-

Hidahl v. Gilpin County Dep't of Social Servs., 938 F.2d 1150, 1155
(10th Cir. 1991)(presumption in favor of qualified immunity for
public official acting in individual capacity)(question of law).
The Court may determine the foregoing two issues in either order.
See Christensen v. Park City Municipal Corp., 554 F.3d 1271, 1277
(10th Cir. 2009).

Generally, "clearly established" law must be an on-point
decision by the United States Supreme Court, Tenth Circuit or the
New Mexico Supreme Court. See, i.e. Davis v. Scherer, 468 U.S.
183, 194-196 (1984); Albright v. Rodriquez, 51 F.3d 1531, 1535
(10th Cir. 1995). Moreover, the law allegedly violated must be a
right created by the United States Constitution or federal law.
See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Baker v. McCollan,
443 U.S. 137 (1979). An alleged violation of state law simply does
not create a § 1983 claim. Id.; Davis v. Scherer, supra.

Plaintiff is not required to show a "factually identical case"
to meet his burden and thereby defeat qualified immunity, but he
must identify a preexisting case with "factual correspondence" to
the situation at issue. See Armijo v. Wagon Mound Public Schools,
159 F.3d 1253, 1260 (10th Cir. 1998); and see Powell v. Mikulecky,
891 F.2d 1454, 1456-1457 (10th Cir. 1989) (plaintiff must show that
the constitutional right as applied by the case law was
sufficiently clear that a reasonable official would understand his
or her conduct violated that right); Hannula v. City of Lakewood,
907 F.2d 129, 131 (10th Cir. 1990) ("plaintiff must demonstrate a
substantial correspondence between the conduct in question and
prior law allegedly establishing that the defendant's actions were

-14-

clearly prohibited"); Pueblo Neighborhood Health Centers, Inc. v. Losavio, supra, 847 F.2d at 645 ("plaintiff must do more than identify in the abstract a clearly established right and allege that defendant violated it").

Here, Ms. Peel is entitled to qualified immunity because, on information and belief, there was no violation by Ms. Peel of a constitutional right and no clearly-established case law with "factual correspondence" to the situation here suggesting to the contrary. Thus, qualified immunity applies. See Hope v. Pelzer, 536 U.S. 730, 739-40 (2002) ("qualified immunity operates to ensure that before they are subjected to suit [under 42 U.S.C. § 1983], officers are on notice their conduct is unlawful"). For the same reasons (no violation of Plaintiff's constitutional rights, and no clearly-established case law) qualified immunity applies, too, to Ms. Webb and Mr. Casanova.

## III: **Tort Claim (False Imprisonment)**

Plaintiff also makes a common-law claim of false imprisonment against Defendant Casanova, Administrator of the Detention Center, and his employer, the Board of County Commissioners, pursuant to the New Mexico Tort Claims Act. See Compl., ¶¶ 31-33. Plaintiff in his complaint alleges (and it is not disputed) that Mr. Casanova acted within the scope of his duties. See Compl., ¶ 4.[3]

---

[3] Under the New Mexico Tort Claims Act, the definition of "governmental entity" includes all political subdivisions of the state and their agencies, instrumentalities and institutions. See §§ 41-4-3(B), 41-4-3(C) NMSA 1978; see also §§ 4-38-1, 4-46-1 (lawsuits against county must name Board of County Commissioners rather than the county itself).

It is hornbook law that New Mexico governmental entities such as the Board of County Commissioners and their public employees "while acting within the scope of duty" are immune from liability for "any tort" except if the immunity expressly is waived in the New Mexico Tort Claims Act. See §§ 41-4-2(A), 41-4-4(A), 41-4-17, NMSA 1978. Clearly, § 41-4-12 of the New Mexico Tort Claims Act waives immunity for a law enforcement officer's commission of the tort of false imprisonment.

The existence of probable cause, however, is a defense to, and negates liability for, the tort of false imprisonment. See State v. Johnson, 1996-NMSC-075, 122 N.M. 696, 701-02, 930 P.2d 1148, 1153-54 (1996)(probable cause is defense to false imprisonment); Hoffman v. Martinez, 92 Fed.Appx. 628, 631 (10th Cir. 2004)(under New Mexico state law, "claims of false arrest, false imprisonment, and malicious prosecution must be premised on a lack of probable cause") (citing cases); Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159 at ¶ 14, 143 N.M. 84, 88-89, 173 P.3d 6, 10-11 (Ct.App.), cert. denied, 143 N.M. 156 (2007) (same). "The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." Santillo, supra, 2007-NMCA-159 at ¶ 12 (emphasis added).

Here, the undisputed evidence shows that the Court signed and issued a Bench Warrant commanding Plaintiff's arrest for failure to comply with court-ordered conditions of probation; that the warrant was based on evidence that Plaintiff had, in fact, violated his conditions of probation; that the warrant was facially valid (see

-16-

Ex. I); that Plaintiff was arrested on the Bench Warrant by a municipal police officer, taken into custody, and booked into the Roosevelt County Detention Center; that at the booking, the arresting officer presented a copy of the signed warrant to the Roosevelt County Detention Center; and that the detention center released Plaintiff from its custody on the same day that it received the Court's release order (July 22, 2013, the day it was signed and filed). See Undisputed Facts Nos. 16-20. Under these undisputed facts and circumstances, Defendant Casanova and his employer cannot be held liable for the tort of false imprisonment, and they clearly are entitled to summary judgment on the claim.

## CONCLUSION

For the reasons set forth herein, the Court should grant the motion and enter summary judgment in favor of Defendants, based on absolute immunity and qualified immunity, and also should grant summary judgment on the common-law claim of false imprisonment.

Respectfully submitted,

/s/ Michael Dickman
**MICHAEL DICKMAN**
Post Office Box 549
Santa Fe, NM 87504
(505) 989-9360
**Attorney for Defendants**

## CERTIFICATE OF SERVICE

I certify that I caused copies of this motion
to be electronically served on
all counsel of record
on the date of filing hereof
at their respective email addresses as registered on CM/ECF

/s/ Michael Dickman
**MICHAEL DICKMAN**