## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**FRANCISCO FRANCO,**

        **Plaintiff,**

**v.**                                       **CIV No. 13-714 LH/GBW**

**THE BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF ROOSEVELT, in its
official capacity, CHARLENE WEBB, in her
individual and official capacities, DAVID
CASANOVA, in his individual and official
capacities, and TAMARA PEEL, in her
individual and official capacities,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity (ECF No. 18)("Defendants' motion" or "the motion"). The Court, having reviewed the motion, response thereto, reply brief, attached exhibits and relevant case law, concludes that the motion is **granted**.

## I.  Procedural Background

      The Civil Complaint for Civil Rights Violations (ECF No. 1)("the Complaint"), brought pursuant to 42 U.S.C. § 1983 and to state law, names the following as Defendants:  Roosevelt County Board of County Commissioners ("the Board"); Charlene Webb ("Defendant Webb"), Roosevelt County Manager; David Casanova ("Defendant Casanova"), Roosevelt County

Detention Center Administrator; and, Tamara Peel ("Defendant Peel"), Roosevelt County Magistrate Court Misdemeanor Probation Monitoring Officer.  The Complaint contains three counts, alleging these causes of action:  (1) deprivation of substantive and due process rights under the Fourth and Fourteenth Amendments to the United States Constitution, brought against all named Defendants; (2) unlawful arrest under the Fourth and Fourteenth Amendments to the United States Constitution, which the Court construes to be brought against Defendant Peel only; and, (3) state tort claims for false imprisonment and "deprivation of Plaintiff's rights, privileges and immunities secured by the constitution and laws of . . . New Mexico," brought against Defendant Casanova and the Defendant Board.

The caption of this lawsuit indicates that, in addition to suing the Board, Plaintiff has sued the three remaining defendants in their individual and official capacities.  As noted above, Counts I and II are claims for the constitutional torts of deprivation of substantive due process and unlawful arrest, respectively.  Count I collectively alleges actions of "the Defendants," without any specificity as to what any individual Defendant allegedly did.  Count II is limited to allegations about actions of Defendant Peel.  The Court construes Count I as being asserted against the Board, and against the other three named defendants, in their individual and official capacities, whereas Count II is construed as being brought strictly against Defendant Peel, in her individual and official capacities.

Plaintiff's claims in this lawsuit have their genesis in an incident wherein Probation Officer Peel filed a report of probation violation, resulting in the issuance of a bench warrant for Plaintiff's arrest that was served upon Plaintiff.  Plaintiff further claims that he was incarcerated in the Roosevelt County Detention Center ("RCDC"), where he spent 21 days for a "non-existent probation violation."  (Compl. ¶ 15)

Defendants filed a Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity (ECF No. 18) on October 18, 2013.  Defendants' position in their motion is that it is undisputed that, pursuant to a plea agreement, Plaintiff was sentenced to two terms of probation for two different crimes; that the two terms of probation were to be served consecutively; that only one of the terms of probation had expired at the time that Plaintiff violated his conditions of probation in June of 2013; and that the second term of probation was still in force when the Court issued a bench warrant, resulting in Plaintiff's arrest on July 1, 2013, on the charged probation violation.  Defendants contend that all steps leading to, and resulting in, Plaintiff's arrest for the probation violation, were legally conducted and that therefore they are subject to no liability in this regard.  Secondly, they assert that the scope of Defendant Peel's duties are undisputed, and because her acts had an integral relationship with the judicial process, she is therefore clothed with absolute judicial immunity.  As an alternative to judicial immunity, Defendants argue that Defendant Peel is entitled to qualified immunity.  They also argue that Defendant Casanova, who did nothing other than incarcerate Plaintiff, based on an express, facially-valid bench warrant, is also absolutely immune from suit for damages. Where Defendant Webb is concerned, they argue an absence of specific allegations and actual proof against her, saying it is "anybody's guess what she is alleged to have done in alleged violation of the United States Constitution."   (Mot.Summ.J. at 13)  Finally, with regard to Plaintiff's tort claims, Defendants' position is that, although the New Mexico Tort Claims Act waives immunity for a law enforcement officer's commission of the tort of false imprisonment, the existence of probable cause, clearly indicated by undisputed evidence in this case, is a defense to, and eliminates liability for, this tort.  (*Id.* at 15-16)

On the same day that Defendants filed their reply brief, they filed a Notice of Errata and Addendum (ECF No. 24)("Notice"), seeking to insert Exhibit H-1 into the record.  This is a document that defense counsel erroneously omitted with the submission of their motion for summary judgment.  Exhibit H-1 is attached to the Notice.  It is a Motion for Discharge and Order, and is the same document that Plaintiff attached to his response brief as Exhibit 4. Exhibit H-1 is accepted by the Court as a part of the record.

In addition to his response brief, subsequent to the filing of the motion for summary judgment, Plaintiff filed a motion to strike two paragraphs of Defendants' Exhibit A, and all of Defendants' Exhibit H.  (ECF No. 23)  This motion was granted in part and denied in part.  (ECF No. 38)  On October 30, 2013, Magistrate Judge Wormuth entered an order staying discovery in this case, pending the Court's disposition of Defendants' Motion for Summary Judgment.  (ECF No. 21)  Plaintiff filed a motion to supplement the record (ECF No. 28) with an additional exhibit.  This motion was granted.  (ECF No.  39)  Plaintiff also filed a cross-motion for summary judgment (ECF No. 27) on November 25, 2013.

## II.  Summary Judgment Legal Standards

An important function of summary judgment is to eliminate factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed.R.Civ.P. 56(c)).

"All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  Section 1983 Legal Standards

Because § 1983 is a vehicle for imposing personal liability on government officials, the Tenth Circuit has stressed the "need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). The Tenth Circuit has emphasized that it is "particularly important" for plaintiffs to clarify exactly who is alleged to have done what to whom -- as distinguished from collective allegations. *Id.* The *Pahls* Court indicated that "plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." *Id.* at 1225-26 (citations omitted).

## IV.  Undisputed Facts

The Court accepts the following as the undisputed, relevant facts in this matter, which are primarily established by the state court record created in conjunction with Plaintiff's criminal case.

On December 27, 2010, in a Criminal Information ("the Information"), the Roosevelt County district attorney charged Plaintiff with breaking and entering, a fourth-degree felony (Count 1), and criminal damage to property under $1,000, a petty misdemeanor (Count 2).  (Ex. B)  On March 7, 2012, Plaintiff pled guilty to a reduced charge, the misdemeanor of attempted breaking and entering, and to the petty misdemeanor charge of criminal damage to property.

As to Count 1 of the Information, he agreed to 364 days of incarceration in the RCDC, to be suspended in favor of supervised probation with the misdemeanor probation officer, and to additional conditions of probation, such as drug screening.  For Count 2, he agreed to 182 days of incarceration in the RCDC, to be suspended in favor of supervised probation with the misdemeanor probation officer. The Plea and Disposition Agreement, Exhibit C, was signed by Plaintiff, his attorney and the district attorney and states that "Probation as to Counts 1 and 2 will run consecutively."  On March 7, 2012, this agreement was approved and filed by the court, and on April 12, 2012, the Judgment and Sentence, Exhibit D, was entered, imposing this sentence of two consecutive terms of supervised probation.[1]   The RCDC Disposition Sheet, Exhibit E, entered by the court on March 7, 2012, stated:  "SENTENCE:  Ct. I:  364 days suspended in favor of supervised probation w/Misd.Probation Office; Ct II:  182 days suspended in favor of supervised probation w/Misd Probation Officer; consecutive to Ct. I."

---

[1]   Thus, Plaintiff's first term of supervised probation ran from March 8, 2012 through March 7, 2013, and his second term of supervised probation ran from March 8, 2013 through September 6, 2013.

During the first term of supervised probation, Plaintiff dutifully reported to Defendant Peel's office, on a monthly basis, as required by order of the court.  (Peel Aff., Ex. A, ¶ 11)  Also during this first term, the court issued a bench warrant, related to Plaintiff's alleged failure to comply with a condition of probation, namely to timely complete a court-ordered program. Plaintiff was arrested and incarcerated, however the court decided against revocation of probation, and Plaintiff was released from custody upon the posting of a $1,000 bond, whereupon he continued on supervised probation.

On March 7, 2013, Defendant Peel submitted a one page document to the court --  a Motion for Discharge and Order.  (*Id.*, ¶14; Exs. H-1, 2 and 4)[2]  The file stamp date for this motion is April 1, 2013.  The motion portion states, in relevant part:

> the above-referenced defendant [Francisco Franco] was given 364 days supervised probation and the defendant has completed the period of probation without revocation. WHEREFORE, the State moves the Court grant the above-referenced defendant be discharge [sic] from probation.

The bottom half of the one page document contains the order, dated March 7, 2013, was signed by Judge Tatum and states:

> THIS MATTER, having come before the Court, and the Court Being fully advised in the Premises;
> IT IS THEREFORE ORDERED AND DECREED that Francisco Franco be discharged from the terms of probation.

Subsequent to March 7, 2013, Plaintiff continued to report to Defendant Peel's office monthly.  (Peel Aff., Ex. A, ¶ 16)

On March 19, 2013, Deputy Assistant District Attorney Brian Stover submitted a Notice of Dismissal (Ex. G) to the Court.  It indicated that it related to Count 1; that the Report of

---

[2] Plaintiff has submitted two exhibits that are identical -- Exhibits 2 and 4.  Defendants also submitted the same document as Exhibit H-1.

Violation filed in this case was dismissed with prejudice; and that Francisco Franco's probation expired on March 7, 2013.

On June 12, 2013, Defendant Peel submitted a Report of Violation ("Report") (Ex. H, ECF No. 18-8) to the state district court. (Peel Aff., Ex. A, ¶ 14). The Report indicated that Plaintiff had violated two conditions of his probation because he tested positive in a random drug screening on June 5, 2013, and because he was observed by a Portales police officer as being "highly intoxicated" during a domestic disturbance call. The Report included documentation to substantiate the alleged violations, including copies of the drug test results and the police incident report. State District Judge Tatum signed Exhibit H, thereby approving Defendant Peel's recommendation that a bench warrant for Plaintiff's arrest be issued. Exhibit H set bond at $3,000. On June 13, 2013, a bench warrant, Exhibit I, submitted by Deputy Assistant District Attorney Brian Stover, was issued by State District Judge Tatum. This document indicated that Plaintiff had failed to comply with his conditions of probation.

On June 27, 2013, Deputy Assistant District Attorney Brian Stover filed a Motion to Revoke Probation, Exhibit J, based on the two violations mentioned above. On July 1, 2013, Plaintiff was arrested and taken into custody, pursuant to the bench warrant. A return of service of the bench warrant, Exhibit K, was filed on July 2, 2013. At the time that Plaintiff was booked into the RCDC, the arresting officer presented RCDC with a copy of the signed bench warrant for Plaintiff's arrest. (Casanova Aff., Ex. M, ¶ 4) This bench warrant became part of the RCDC's official files. (*Id.*) According to an RCDC Disposition Sheet, Exhibit L, on July 22, 2013, Plaintiff was released from custody.

**V.  Analysis of Unlawful Arrest Claim Against Officer Peel (Count II)**

Plaintiff's claim against Defendant Peel for unlawful arrest is limited.  He does not dispute the nature or fact of his behavior underlying the alleged probation violation.  Rather, he contends that he was no longer on probation in early June 2013, at the time Defendant Peel submitted her Report of Violation to the district court, culminating in what he characterizes as an unlawful arrest.

The summary judgment record now before the Court is primarily comprised of the state court records that were promulgated in Plaintiff's criminal case, up to the time of his arrest in June 2013. These records, read in their entirety, support the conclusion that, when Defendant Peel submitted her June 12, 2013 Report of Violation to Judge Tatum, Plaintiff was still subject to the terms of his second period of probation, which was running consecutively with his first term, and was not due to be completed until September 6, 2013.  The fact that Judge Tatum considered Plaintiff to be subject to a second term of probation, 182 days in length, is further evidenced by his signature on Exhibit I, the bench warrant for Plaintiff's arrest.

Plaintiff argues for a contrary conclusion, arguing that Judge Tatum's March 7, 2013 order broadly mandated that "Francisco Franco be discharged from the terms of probation." Admittedly, Judge Tatum's March 7, 2013 order could have been more explicit.  Read in conjunction with the accompanying Motion for Discharge however, the Court is confident in its interpretation of Judge Tatum's order.  This order specifically states that Plaintiff had been given 364 days supervised probation, and that he had completed "the period of probation without revocation[.]"  Reading these two facts together, this Court concludes that the effect of this order was to discharge Plaintiff from the first term of probation, 364 days in length.  Having read the complete summary judgment record attendant to Defendants' motion, despite the lack of

specificity of Judge Tatum's March 7, 2013 order, this Court finds that, following entry of this order, Plaintiff remained subject to his second term of supervised release, 182 days in length. The state court record clearly establishes that, although Plaintiff successfully completed his first term of probation, that he had agreed to serve two consecutive terms of probation, and that he was still subject to a second term of probation at the time he violated two conditions of that probation in early June 2013.

Interestingly, Plaintiff does not dispute that he participated in a random drug screening on June 5, 2013. Clearly he would not have been required to participate in such screening, had he no longer been on probation, nor presumably, would he have done so. As noted above, the record is clear that Plaintiff continued to report to his probation officer, Officer Peel, after his first term of probation ended in early March 2013. Again, this is not something that Plaintiff would have done, had he not been knowingly complying with the conditions of his second term of probation.[3] Officer Peel's action, of which Plaintiff complains, is her reporting Plaintiff's probation violations. There is no proof in the record to establish that Defendant Peel's submissions to the state district court were erroneously or illegally done.

Furthermore, even if she had mistakenly submitted this Report, the Court concludes that Defendant Peel is protected from suit by judicial immunity. Plaintiff claims that this defense is unavailable to Defendant Peel, because she is an independent contractor. Defendant Peel does not dispute that her employment as Misdemeanor Probation Officer and Court Compliance Officer is as an independent contractor, rather than as a full-time, regular county employee. She

---

[3] In Paragraph 8 of his Response to "Statement of Undisputed Material Facts," Plaintiff does not directly dispute that he continued to report to Officer Peel monthly during his second, consecutive term of supervised probation that commenced on March 8, 2013. Rather, he states that he did not speak to or see Officer Peel from July 1-22, 2013; that after July 22, 2013, Officer Peel did not require that Plaintiff report to her office for any probation meetings; and, that no charges have been filed against him for failure to report to his probation officer. Resp., pp. 6-7. These factual assertions do not establish that Plaintiff was not on probation beginning on March 8, 2013, and do not dispute that after Judge Tatum's March 7, 2013 order was entered, Plaintiff continued to report to Officer Peel monthly, at least until his July 1, 2013 arrest.

contends that despite her independent contractor status, she is not prohibited from seeking judicial immunity.

This issue was addressed in the case of *Filarsky v. Delia*, ___ U.S. ___, 132 S.Ct. 1657 (2012). The Supreme Court began its analysis by noting that § 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. *Id.* at 1661. It noted that anyone whose conduct is "fairly attributable to the state" can be sued as a state actor under § 1983, citing *Luger v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). *Id.*[4]

In determining that there is no valid distinction between municipal employees and a private individual retained by the government to carry out its work, for purposes of immunity, the *Filarsky* Court looked to the general principles of tort immunities and defenses applicable at common law, and the reasons the Supreme Court has afforded protection from suit under § 1983. *Id.* at 1662. On pages 1665 and 1666, the Court stated four reasons for recognizing immunity under § 1983. First is the government interest in avoiding "unwarranted timidity" on the part of those engaged in the public's business, which was called "the most important special government immunity-producing concern" in the case of *Richardson v. McKnight*, 521 U.S. 399, 409-411 (1997). The second reason is the Court's conclusion that affording immunity to those acting on the government's behalf serves to "ensure that talented candidates are not deterred by the threat of damages suits from entering public service." *Id.* at 408. Third is the public interest in ensuring performance of government duties free from the distractions that can accompany even routine lawsuits that are implicated, whether those duties are discharged by private individuals or

---

[4] Paragraph 5 of Plaintiff's Complaint alleges that Officer Peel "acted under color of state law, local ordinance, custom and/or policy and within the scope of her duties, and engaged in the unconstitutional acts as outlined in this Complaint." In other words, Plaintiff considered Officer Peel to be a state actor in bringing his § 1983 claim against her.

permanent government employees.   *Id.* at 411.   Finally, is the Court's reasoning that distinguishing among those who carry out the public's business based on their particular relationship with the government creates significant line-drawing problems, and can deprive state actors of the ability to reasonably anticipate when their conduct may give rise to liability for damages. *Filarsky v. Delia,* 132 S.Ct. at 1666.

Based on these reasons, the *Filarsky* Court concluded that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis."  *Id.*  at 1665.

Although the issue in *Filarsky* involved qualified immunity, the Court discussed and partially based its decision on the doctrine of judicial absolute immunity.  In doing so, it pointed out that at common law (incorporated by the Supreme Court into § 1983 law), justices of the peace were afforded absolute immunity, even if they maintained private law practices or had non-legal livelihoods, or were not paid any compensation by the government. *Id.* at 1663-64. Absolute immunity is "justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).

Pursuant to this precedent, the Court concludes that Defendant Peel's status as an independent contractor does not preclude her from being eligible for the protection of absolute immunity.  The Court must now address whether or not she is, in fact, protected by such immunity.

This Court finds guidance in the case of *Tripati v. United States Immigration and Naturalization Serv.*, 784 F.2d 345, 347-48 (10th Cir. 1986).  In *Tripati,*  probation officers purportedly made false statements in pretrial bond and presentence reports.  Because their reports

were "intimately associated" with the judicial decision-making process, the Tenth Circuit extended absolute immunity to them, in a suit for civil damages.

Likewise, in this case, there can be no doubt that Defendant Peel's submission of reports of probation violations is an important part of the judicial process in criminal cases.  Probation officers who assist in these types of determinations and functions perform critical roles.  *Id.* at 348 (characterizing the decision as to whether to order the pretrial release of a criminal defendant and the selection of an appropriate sentence after his conviction as involving "critical roles" by probation officers).  The Court concludes that, given the nature of the challenged activity of Defendant Peel, she is absolutely immune from a civil suit for damages.  Defendant Peel's action specifically at issue here -- her submissions to the state court of information about probation violations by Plaintiff -- is a duty which is a governmental function, and an action to assist the courts.  This action was taken pursuant to N.M. STAT. ANN. § 31-20-5.1(A)(2010 Repl. Pamp.).

In summary, given the nature of Defendant Peel's duties and actions involved in this case, even as an independent contractor, she is entitled to absolute immunity.  Accordingly, Officer Peel is immune from Plaintiff's claims brought against her under § 1983 for unlawful arrest, as alleged in Count II of Plaintiff's complaint.  These claims against Officer Peel, in her individual capacity, are accordingly **DISMISSED WITH PREJUDICE.**

## VI.  Analysis of Violation of Due Process Claim Against All Defendants (Count I)

Plaintiff makes this claim in broad, vague terms, collectively against all Defendants, alleging generally that he had a substantive due process interest in his safety and well-being pursuant to the Fourth and Fourteenth Amendments to the United States Constitution; that Defendants deprived him of his safety and well-being without justification; that this deprivation

was arbitrary and capricious; that his substantive due process interest gave rise to a right to procedural due process; that Defendants' actions deprived him of his substantive due process rights, including his right to liberty and freedom from unlawful arrest without valid charges; and that Defendants' actions, individually and collectively, deprived him of fundamental rights under the constitution and were "shocking to the conscience."  (Compl. ¶¶ 20-26).

Recently, the Tenth Circuit in *Hernandez v. Ridley,* 734 F.3d 1254 (10th Cir. 2013) discussed the basics of due process, noting that "[t]he ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges."  *Id.* at 1261 (citation omitted).  "Conduct that shocks the judicial conscience … is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice."  *Seegmiller v. LaVerkin City,* 528 F.3d 762, 767 (10th Cir. 2008)(quotations omitted).  To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or "employ[ed] it as an instrument of oppression."  *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008).  The behavior complained of must be egregious and outrageous.  *Id.* (substantive due process prohibits "only the most egregious official conduct")(quotations omitted); *see also Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995)("[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.")

## A.  Defendant Peel Is Immune From Suit Under  Count I

The Court has already set forth the entire factual basis contained in the record as to the specific actions Defendant Peel took with regard to Plaintiff.  In support of his due process claim,

Plaintiff has produced no additional evidence of any other conduct by Defendant Peel. To summarize, the only evidence before the Court of Defendant Peel's conduct, relevant to Count I, consists of her submitting (1) a one-page document, a motion and order for discharge, to the Court (Exs. H-1, 2 and 4);[5] and, (2) a Report of Violation (Ex. H).[6]  The Court has already concluded that these actions are entitled to absolute immunity in the context of Count II, an unlawful arrest claim.  This is because the nature of Defendant Peel's actions is "intimately associated" with the judicial decision-making process, and because she, as a probation officer performed critical roles.  The same reasons entitle Defendant Peel to absolute immunity under Count I for Plaintiff's claims brought against her under § 1983 for due process violations.  These claims against Defendant Peel, in her individual capacity, are accordingly **DISMISSED WITH PREJUDICE**.

### B.  Defendant Casanova Is Immune From Suit Under Count I

Plaintiff claims that his detention at the RCDC violated his due process rights, and that Defendant Casanova, the RCDC administrator, is responsible for this violation.  The Court notes that there is no proof in the record of any action personally taken by Defendant David Casanova, head of the RCDC.  There is proof however, that Plaintiff was booked into the RCDC, after the arresting officer presented the bench warrant for Plaintiff's arrest to an unnamed RCDC employee.  (Casanova Aff., Ex. M, ¶ 4)   The Court will accordingly evaluate Defendant Casanova's potential liability under Count I, given that he was the RCDC administrator at all times relevant to this litigation.

---

[5] Entry of this order resulted in Plaintiff's release from his initial period of probation, 364 days in length.
[6] This Report indicated that Plaintiff had violated two conditions of his probation.

First of all, the Court notes that although Plaintiff disputes the legality of his arrest, he does not contend that there is any deficiency in the bench warrant itself; he does not dispute its facial validity.  In fact, having carefully reviewed Exhibit I, the Court finds it to be facially valid.

To the extent that Plaintiff claims that his detention, based on a facially valid bench warrant, violated his due process rights, the Court concludes that Defendant Casanova is entitled to absolute immunity.  Just as judges acting in their judicial capacity, within their judicial jurisdiction, are absolutely immune from liability under § 1983, *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967), officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.  *Turney v. O'Toole*, 898 F.2d 1470,1472 (10th Cir. 1990).  In short, when a government official acts pursuant to a facially-valid court order -- in this instance a bench warrant -- that official is entitled to absolute immunity irrespective of the constitutionality or legality of the order.

If a bench warrant is erroneous, the appropriate remedy is for a plaintiff to contest the legality of the warrant and appeal that judgment rather than sue the official responsible for its execution.  *Valdez v. City and County of Denver*, 878 F,2d 1285, 1289-90 (10th Cir. 1989);  s*ee also Carter v. Hobbs Police Dep't,* 134 F.3d 382 (10th Cir. 1998)(unpublished).[7]

Pursuant to this reasoning, the Court concludes that Defendant Casanova is entitled to absolute immunity under Count I for Plaintiff's claims brought against him under § 1983 for due process violations.  Plaintiff's claims brought against Defendant Casanova in his individual

---

[7] The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  *See* 10th Cir.R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:  "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  *United States v. Austin,* 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that the *Carter* case has persuasive value with respect to a material issue, and will assist the Court in its disposition of the issues before it.

capacity under § 1983 for due process violations are accordingly **DISMISSED WITH PREJUDICE.**

### C.  Defendant Webb Is Not Liable Under Count I

Defendants point out the complete absence of proof in the record of any action undertaken by Defendant Charlotte Webb, County Manager.  Plaintiff's entire presentation in opposition to Defendants' motion for summary judgment suffers generally from a lack of attention to particulars, however nowhere is this deficiency more acute than in his claims made in Count I, and especially where Defendant Webb is concerned.  The record lacks any evidence whatsoever to even *suggest* that Defendant Webb was involved in any of these -- allegedly -- unlawful activities.  To survive summary judgment, Plaintiff should have come forward with some relevant evidence about Defendant Webb's conduct.  *See Lewis v. Tripp,* 604 F.3d 1221, 1230 (10th Cir. 2010)(holding that trial court erred in denying summary judgment to Defendant Tripp given an "insuperable difficulty," i.e. a lack of evidence that he was involved in any of the allegedly unlawful activities).  Given Plaintiff's absolute failure to produce any evidence of any conduct by Defendant Webb, summary judgment is granted in her favor.  The claims in Count I against Defendant Webb, in her individual capacity, are accordingly **DISMISSED WITH PREJUDICE**.

### D.  The Board Is Not Liable Under Count I

As noted above, in Count I, Plaintiff collectively sues all Defendants, making broad sweeping allegations, lumping all "Defendants" together, without differentiating as to what specific actions were taken by particular Defendants, in alleged violation of his due process

rights.   Paragraph 16 of the Complaint, under the "Commons Facts" section, alleges that "Defendants had a policy, custom and routine of failing to properly conduct records checks and keeping individuals incarcerated at the Roosevelt County Detention Center without valid charges." The Court construes this as being the only allegation in the Complaint of any policy or custom of the Board which could give rise to a viable § 1983 claim.   Defendants' motion for summary judgment seeks dismissal of this claim against the Board, arguing that Plaintiff has failed to establish that a municipal policy or custom caused a constitutional injury.

The Supreme Court established in *Monell v. New York City Department of Social Serv.,* 436 U.S. 658, 690-91 (1978), that in order to have recourse against a municipality or other local government under Section 1983, plaintiffs "must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Id.* at 691.   "In other words, municipalities are 'responsible only for their own illegal acts,' and cannot be held 'vicariously liable under § 1983 for their employees' action.' " *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011).   *See also Carney v. City and County of Denver,* 534 F.3d 1269 (10th Cir. 2008)(holding that a municipality may be held liable for the unconstitutional acts of its employees under § 1983, if the plaintiff can show that the alleged conduct was the result of a municipal policy or custom).   To establish municipal liability, "it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

In the *Carney* case, the Tenth Circuit noted the difference between municipal policies and customs.   Quoting *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003), the Court noted that an unconstitutional deprivation is caused by a municipal policy if it results

from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself.  *Carney v. City and County of Denver*, 534 F.3d at 1274.  In general, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick v. Thompson,* 131 S.Ct. at 1359 (citing *Monell,* 436 U.S. at 694).

On the other hand, a custom is interpreted as an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law. *Carney v. City and County of Denver,* 534 F.3d at 1274.  "To be a custom, the actions of the municipal employees must be continuing, persistent and widespread."  *Id.* (quoting *Gates v. Unified Sch. Dist. No. 449,* 996 F.2d 1035, 1041 (10th Cir. 1993)).

In support of his municipal liability claim, Plaintiff has submitted Exhibit 2, the Affidavit of George Rowan.  This affidavit indicates that Mr. Rowan was employed (in an undisclosed capacity) for more than 25 years at the RCDC, from July 1, 1987 to July 16, 2012; that since October 2012, Mr. Rowan has been a bail bondsman, enters RCDC on at least a weekly basis, and has frequent contact with detention officer and inmates; that there were a number of (unspecified) instances during his employ at the RCDC when it was discovered that an inmate had no pending charges against him; that Defendant Casanova, as RCDC administrator, makes up "arbitrary rules" and that employees generally have no idea of any policies and procedures; that the policies and procedures ensuring that inmates have actual pending charges against them are "non-existent," and that instead, the RCDC relies solely on the probation officer or police officer to determine whether the inmate has actual pending charges against him/her.  (Rowan Aff., Ex. 2, ¶¶ 2, 3, 9, 11, 12).

The Court concludes that this affidavit is insufficient to prove a municipal policy or custom (or lack thereof), resulting in constitutional violations, according to the legal standards set forth above.  The opinion of one former employee, whose function at the RCDC is unknown, about things set forth in his affidavit, is insufficient to establish a municipal custom, let alone a policy, that is so persistent and widespread as to have the force of law.

In short, Plaintiff has produced no evidence that the alleged violation of his due process rights, arising from his allegedly illegal detention, was caused by the decision of any duly constituted legislative body, or by an official whose acts may fairly be said to be those of the municipality itself.   Plaintiff has failed to provide evidence establishing the existence of a municipal policy or custom underlying his claim that he was wrongfully detained pursuant to a policy or custom at RCDC of incarcerating individuals without valid charges. One former employee's opinion as to what the status of rules, policies and procedures at RCDC was from 1987 to 2012, is simply inadequate to meet the threshold of proof required by case law in this area of law. Plaintiff has failed to establish that genuine issues of material fact remain for trial and that there is sufficient evidence favoring Plaintiff for a jury to return a verdict in his favor on this issue.   Accordingly, the claims in Count I against the Board are **DISMISSED WITH PREJUDICE.**

### E.  Official Capacity Claims

Defendants Webb, Casanova and Peel were all sued in Count I in their individual capacities, and the Court has found there can be no individual liability for any of them.  They have also all been sued in their official capacities.  Official capacity suits "generally represent  . . . another way of pleading an action against an entity of which an officer is an agent."  *Monell v.*

*New York City Dept. of Social Serv.*, 436 U.S. at 690 n.55.  As noted by *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity.

Roosevelt County is the entity which Plaintiff has sued, through the Board of County Commissioners for the County of Roosevelt.  As noted above in Paragraph VI.D., the Court concludes that the Board will be granted summary judgment for the due process claims contained in Count I --  the only count brought against the Board under § 1983.

Given the rulings elaborated above, Count I is hereby **DISMISSED WITH PREJUDICE**, as to all named Defendants, in their individual and official capacities.


## VIII.  Analysis of False Imprisonment Claim against the Board (Count III)

The heading for Count III in the Complaint indicates that it is brought for "State Tort Claims Against Defendant Board of County Commissioners for Roosevelt County."  This is the only count in Plaintiff's complaint alleging a violation of New Mexico state law.[8]  The gist of this claim is that Defendant Casanova is liable to Plaintiff for false imprisonment, and that the Board, as his employer, is vicariously liable for the torts he committed within the course and scope of his duty as a law enforcement officer.

Defendants' position is that, although the New Mexico Tort Claims Act waives immunity for a law enforcement officer's commission of the tort of false imprisonment, given the probable

---

[8] Count III alleges that "Defendant Roosevelt County Board of County Commissioners as the individual Defendant's employer, is vicariously liable for torts they [sic] committed within the course and scope of his duty as a law enforcement officer."

cause for Plaintiff's incarceration, evidenced by the facially valid bench warrant, Defendant Casanova cannot be found liable for this tort.

"The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." *Santillo v. N.M. Dept. of Pub. Safety*, 143 N.M. 84, 88 (Ct. App. 2007). The torts of false arrest and false imprisonment are similar in that a false arrest is merely one way of committing false imprisonment. *Id*. Notably, "[a]n officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Id.*

As discussed above, based on the undisputed facts, Plaintiff's incarceration occurred following the presentment to an employee at the RCDC of a bench warrant that was facially valid. Plaintiff has failed to establish that his incarceration was done by a person who had knowledge that he had no lawful authority to detain him. Given this failure of proof, Defendants' motion for summary judgment will be granted as to Count III, which is **DISMISSED WITH PREJUDICE.**

**WHEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity (ECF No. 18) is hereby **GRANTED**.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**